**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISON**

| | |
|---|---|
| STEPHANIE RENTA, | CASE NO. 1:20-CV-02249-CEH |
| Plaintiff, | |
| v. | MAGISTRATE JUDGE CARMEN E. HENDERSON |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | **MEMORANDUM OPINION & ORDER** |
| Defendant, | |

**I.  Introduction**

Plaintiff, Stephanie Renta ("Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB"). This matter is before me by consent of the parties under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 14). Because the ALJ followed proper procedures and her findings are supported by substantial evidence, the Court AFFIRMS the Commissioner's final decision denying Renta DIB.

**II.  Procedural History**

On June 12, 2018, Claimant filed an application for DIB, alleging a disability onset date of January 21, 2018 and claiming she was disabled due to psoriatic arthritis. (ECF No. 11, PageID #: 146). The application was denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ"). (ECF No. 11, PageID #: 179). On October 18, 2019, an ALJ held a hearing, during which Claimant, represented by counsel,

1

and an impartial vocational expert testified. (ECF No. 11, PageID #: 104). On November 14, 2019, the ALJ issued a written decision finding Claimant was not disabled. (ECF No. 11, PageID #: 86). The ALJ's decision became final on August 24, 2020, when the Appeals Council declined further review. (ECF No. 11, PageID #: 74).

On October 6, 2020, Claimant filed her Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 13, 17). Claimant asserts the following assignment of error:

> The ALJ erred when test results and a medical opinion regarding the claimant's residual functional capacity were improperly devalued.

(ECF No. 13 at 10).

### III. Background

#### A. Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Claimant's hearing:

> At the hearing, the claimant stated that was not able to return to work full-time because she had pain and difficulty picking things up. She received injections once a week for her arthritis. She said the injections reduced her pain, but it did not take away her pain. She needed help getting dressed and doing her hair. Her father did the laundry, shopping, and cleaning. She said that on a typical day, she cared for her disabled child and she visited with her brother and sister. The claimant did not drive. She stated that she could not completely straighten the fingers on her right hand or make a fist.

(ECF No. 11, PageID #: 93).

#### B. Relevant Medical Evidence

The ALJ also summarized Claimant's health records and symptoms:

> Rheumatologist Mathilde Pioro, M.D. treated the claimant on March 1, 2018 for inflammatory arthritis (Ex. 1F/2). She complained of pain in her hands that was increasing (Ex. 1F/4). She had no pain in her ankles or toes, but said that she could not

walk due to pain and swelling in her knees. She was using a walker for the last two months. She said she had 60 minutes of morning stiffness in the morning, and did not have a regular exercise program (Ex. 1F/5). She needed help getting dressed. She complained of fatigue, joint pain, joint swelling, morning stiffness in joints, and muscle weakness. On a questionnaire, she rated as having mild depression (Ex. 1F/8). She was five feet, nine inches tall and weighed 214 pounds, making her body mass index 31.59 kg/m2. Examination showed that she was anxious and intermittently tearful. She had no edema in her extremities. She had a facial erythematous rash over her malar areas, nose, forehead and chin. She had active synovitis of multiple joints and her bilateral acromioclavicular joints were tender bilaterally (Ex. 1F/9). She had decreased rotation of motion of the shoulders bilaterally. Her knees had bilateral large warm effusions with severe tenderness. There was flexion contracture on the right knee to fifteen degrees. 18 swollen joints and 21 tender points were noted. She also had positive myofascial tenderness over the shoulder girdle bilaterally. Dr. Pioro noted that the claimant had erosive changes on x-rays (Ex. 1F/11). She was prescribed prednisone.

On March 1, 2018, x-rays of the bilateral feet showed erosive changes of the right first IP joint, consistent with psoriatic arthritis (Ex. 1F/28). There was also lateral plate and screw fixation of the distal fibula (Ex. 1F/29). There were flexion deformities of the second through fifth toes. On the left, there was a flexion deformity of the second through fifth toes and no fracture or dislocation. There was a small plantar calcaneal spur and a small Achilles tendon enthesophyte.

Dr. Pioro saw the claimant again on March 19, 2018 who reported marked improvement since she started on prednisone (Ex. 1F/40). She had 90% improvement in her joint pains and was much better functionally. She gradually decreased the prednisone to 10 mg per day. Her blood glucose levels were in the 300s since starting on prednisone. She said she was able to perform all household chores and care for her eighteen-month-old daughter. She was able to walk without devices now and her boyfriend confirmed this. Examination showed that her mood was improved, and her affect was slightly flat (Ex. 1F/42). She had obvious synovitis of the hands. She had a mildly antalgic gait while pushing the baby in the stroller. Her facial rash was slightly decreased and she had psoriasiform lesions through her scalp and the inside of her ears. She had active synovitis in multiple joints, and tenderness in the shoulders. She still had warm effusions in the bilateral knees, with

a flexion contracture on the right (Ex. 1F/43). 20 of her joints were swollen and she had 19 tender points.

On April 10, 2018, the claimant treated with Dr. Pioro for minimal joint pain and marked improvement in function since on prednisone (Ex. 1F/57). However, she still could not fully extend or flex her fingers. She said she was having an easier time caring for her baby, though. She still had stiffness in her fingers, left shoulder, and right knee. She reported that her morning stiffness lasted for five to ten minutes.

Dr. Pioro treated the claimant on July 12, 2018 for worsening swelling and pain since she stopped prednisone (Ex. 1F/70). She was unable to make a fist. Her daily activities were taking longer and were much more painful. She stated that her morning stiffness lasted fifteen minutes. She stated that she had to hold onto something when walking for balance and strength. She was having difficulty taking care of her baby and she required assistance to walk. She was reluctant to take her prednisone because it increased her glucose (Ex. 1F/74).

Ana Yepes Rios, M.D. saw the claimant on January 25, 2019 for psoriatic arthritis (Ex. 7F/7). The claimant stated that she was better able to do housework and activities while taking Humira, but she was not able to stand for long. She was feeling better with a low carbohydrate and gluten free diet. Her fasting blood sugar also dropped to the 140-170 range. Dr. Yepes Rios noted that the claimant's hypertension was controlled and that her obesity improved with significant improvement in eating habits. Her diabetes was better with her improved diet. Dr. Pioro saw the claimant on February 20, 2019 who stated that she ran out of her medication and she now had a recurring pain in her shoulders and knees (Ex. 6F/8). She felt 90% better before running out of the medication. She said while she took Humira, she was able to use her left hand and she was writing better. Without the Humira, she had a recurrence of symptoms. Physical examination showed that she had improved movement in her shoulders and improvement in her facial rash and psoriasis of the scalp (Ex. 6F/9). She did have moderate synovitis and flexion contractures in the joints of her hands.

On August 27, 2019, Dr. Pioro saw the claimant who reported that she was feeling 80% better on increased Humira and she was able to do more (Ex. 8F/7). She stated that it was easier to get up in the morning. She still had residual arthralgias in the right hand. Examination showed normal gait and balance (Ex. 8F/8). She had

4

> mild psoriasis in her left ear. Dr. Pioro stated that she could now easily feel the bony joint spaces with minimal soft tissue swelling. She planned to start her on methotrexate.

(ECF No. 11, PageID #: 94–95).

    C.        **Opinion Evidence at Issue**

        1.        **State Agency Medical Consultants**

On October 10, 2018, Anton Freihofner, M.D., a state agency medical consultant opined in relevant part that Claimant could lift 20 pounds occasionally and 10 pounds frequently. (ECF No. 11, PageID #: 150). He stated that she could stand for four hours and sit for six hours in an eight-hour workday. (ECF No. 11, PageID #: 150). He did not limit Claimant's ability to push or pull and suggested that she could occasionally climb ramps and stairs. (ECF No. 11, PageID #: 150). On December 1, 2018, another state agency medical consultant, Anne Prosperi, D.O., agreed with Dr. Freihofner's opinion. (ECF No. 11, PageID #: 160). The ALJ found their opinions persuasive

> because they were generally consistent with the medical evidence during the period where the claimant was taking medication for her arthritis and following an optimized diet for her diabetes mellitus. Ana Yepes Rios, M.D. saw the claimant on January 25, 2019 for psoriatic arthritis (Ex. 7F/7). The claimant stated that she was better able to do housework and activities while taking Humira, but she was not able to stand for long. She was feeling better with a low carbohydrate and gluten free diet. Her fasting blood sugar also dropped to the 140-170 range. Dr. Yepes Rios noted that the claimant's hypertension was controlled and that her obesity improved with significant improvement in eating habits. Her diabetes was better with her improved diet. On August 27, 2019, Dr. Pioro saw the claimant who reported that she was feeling 80% better on increased Humira and she was able to do more (Ex. 8F/7). She stated that it was easier to get up in the morning. She still had residual arthralgias in the right hand. Examination showed normal gait and balance (Ex. 8F/8). She had mild psoriasis in her left ear. Dr. Pioro stated that she could now easily feel the bony joint spaces with minimal soft tissue swelling. She planned to start her on methotrexate.

5

(ECF No. 11, PageID #: 96).

    2.    **Physical Therapist — Brett Balis, PT, DPT**

On July 29, 2019, Claimant performed a series of functional tests as part of a physical residual functional capacity assessment at the Cleveland Clinic for referred physical therapist Brett Balis. (ECF No. 11, PageID #: 494–95). Based on the assessment results, Mr. Balis opined that Claimant could occasionally lift ten pounds, stand for four hours, and sit for six hours of an eight-hour workday. (ECF No. 11, PageID #: 494). He also indicated that Claimant could only stand for 20 minutes and sit for two hours continuously. (ECF No. 11, PageID #: 494). Mr. Balis stated that Claimant could only occasionally push, pull, and perform gross manipulation and simple grasping and she should avoid firm grasping. (ECF No. 11, PageID #: 495, 497). Finally, he concluded that Claimant would need 30–60 minutes of additional breaks. (ECF No. 11, PageID #: 495).

The ALJ found that the opinion was not persuasive. (ECF No. 11, PageID #: 97). She reasoned:

> This opinion was not persuasive because it was based upon one examination on a single day and does not represent the longitudinal history, which showed that the claimant had marked improvement with an appropriate diet and medications for her inflammatory arthritis. Ana Yepes Rios, M.D. saw the claimant on January 25, 2019 for psoriatic arthritis (Ex. 7F/7). The claimant stated that she was better able to do housework and activities while taking Humira, but she was not able to stand for long. She was feeling better with a low carbohydrate and gluten free diet. Her fasting blood sugar also dropped to the 140-170 range. Dr. Yepes Rios noted that the claimant's hypertension was controlled and that her obesity improved with significant improvement in eating habits. Her diabetes was better with her improved diet. On August 27, 2019, Dr. Pioro saw the claimant who reported that she was feeling 80% better on increased Humira and she was able to do more (Ex. 8F/7). She stated that it was easier to get up in the morning. She still had residual arthralgias in the right hand. Examination showed

> normal gait and balance (Ex. 8F/8). She had mild psoriasis in her left ear. Dr. Pioro stated that she could now easily feel the bony joint spaces with minimal soft tissue swelling. She planned to start her on methotrexate.

(ECF No. 11, PageID #: 97).

## IV.  The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

> 2. The claimant has the following severe impairments: inflammatory arthritis and diabetes mellitus.
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she can lift and/or carry 20 pounds frequently and 10 pounds occasionally. She can stand and/or walk 4 hours in an 8-hour workday. She can sit for 6 hours in an 8-hour workday. She can occasionally climb ramps and stairs. She can never climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch, or crawl. She can frequently reach overhead bilaterally. She can frequently handle and finger. She can occasionally be exposed to hazards such as unprotected heights.

(ECF No. 11 PageID #: 91–92).

## V.  Law & Analysis

### A.  Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

**B.        Standard for Disability**

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step

five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

    C.    **Discussion**

Claimant raises one issue on appeal. Claimant argues that the ALJ erred in her treatment of Mr. Balis's medical findings and opinion. At Step Four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. § 404.1520(e). On January 18, 2017, the Social Security Administration amended the rules for evaluating medical opinions for claims filed after March 27, 2017. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." C.F.R. § 404.1520c(a). Nevertheless, an ALJ must "articulate how [she] considered the medical opinions and prior administrative medical findings" in adjudicating a claim. 20 C.F.R. § 404.1520c(a). In doing so, the ALJ is required to explain how she considered the supportability and consistency of a source's medical opinion(s), but generally is not required to discuss other factors. 20 C.F.R. § 404.1520c(b)(2). Medical source opinions are evaluated using the factors listed in 20 C.F.R. § 404.1520c(c). The factors include: supportability; consistency; the source's relationship with the claimant; the source's specialized area of practice, if any; and "other factors that tend to support or contradict a medical opinion." 20 C.F.R. §§ 404.1520c(c), 404.1520c(b)(2) ("The factors of supportability [ ] and consistency [ ] are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions . . . .").

After Claimant performed a series of activities for Mr. Balis, he opined in relevant part that

9

Claimant could only stand for 20 minutes and sit for two hours continuously and limited Claimant to lifting 10 pounds occasionally. The ALJ considered Mr. Balis's opinion "not persuasive," reasoning that "it was based upon one examination on a single day and does not represent the longitudinal history, which showed that the claimant had marked improvement with an appropriate diet and medications for her inflammatory arthritis." (ECF No. 11, PageID #: 97). The ALJ then discussed Claimant's visit with Dr. Rios in January 2019. (ECF No. 11, PageID #: 97). The ALJ recognized that Claimant stated she was "better able to do housework and activities while taking Humira, but she was not able to stand for long." (ECF No. 11, PageID #: 97). She also noted that in August 2019, Claimant reported that she was feeling 80% better on Humira and was able to do more. (ECF No. 11, PageID #: 97).

Claimant argues that the ALJ "casually devalued" Claimant's test results and Mr. Balis's findings without building a logical bridge between the evidence and the result. (ECF No. 13, PageID #: 611). She alleges that the ALJ gave two reasons for rejecting the findings: (1) they were based on one examination in a single day and (2) it did not represent the longitudinal history that showed Claimant's improvement with appropriate diet and medication. Claimant asserts that relying on these reasons was error and that the factors found in 20 C.F.R. § 1520c(c) support assigning Mr. Balis's opinion greater evidentiary weight. The Court will address each of Claimant's arguments in turn.

First, Claimant argues that the ALJ's first reason—the examination was based on a single day—was not persuasive because it "fails to explain how any exam is not simply conducted on a single day, and would exclude reliance on all the medical exams used in SSA disability evaluations." (ECF No. 13 at 611). The Claimant also states that there is no evidence indicating that Claimant had an abnormal day on the day of testing. Further, she notes that the ALJ found

10

the state agency opinions persuasive without ever examining Claimant. This argument, however, is without merit. When evaluating a medical source opinion, the ALJ is required to consider various factors, including the length of the medical source's treatment relationship and the frequency of examination. *See* 20 C.F.R. §§ 404.1520c(c)(3)(i)–(ii). The length of time the medical source has treated a claimant and the frequency of examinations help demonstrate whether the medical source "has a longitudinal understanding of [a claimant's] impairments. *Id.* Thus, the ALJ did not err in discrediting Mr. Balis's opinion for being supported by only one examination and not the full medical record. *See Amso v. Comm'r of Soc. Sec.*, 2:17-cv-11750, 2018 WL 4854110, at *9 (E.D. Mich. May 1, 2018) (concluding that the ALJ properly discredited an opinion "based on a single evaluation").

Second, Claimant argues that the ALJ's second explanation—that Mr. Balis's test did not represent Claimant's longitudinal history showing improvement on medication—is unpersuasive because Claimant started on Humira, the medication that improved her functioning, in July 2018 and Mr. Balis performed his assessment in July 2019. She asserts that any improvement was observed on the day of Mr. Balis's assessment and was therefore reflected in his opinion. Commissioner responds that Mr. Balis was not a treating therapist, but simply referred by Claimant's physician to assist in making a recommendation for Claimant's application for disability. Commissioner asserts that there is no indication that Mr. Balis knew of Claimant's treatment history or current medications.

It's important to emphasize that the Court is limited to determining whether the ALJ's decision was made pursuant to the proper legal standards and was supported by substantial evidence. *See Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015). The Court cannot, as Claimant seems to request, reweigh the evidence. *See Big Ranch Res., Inc. v. Ogle*,

11

737 F.3d 1063, 1074 (6th Cir. 2013). Claimant does not argue that the ALJ failed to meet the articulation requirements of 20 C.F.R. § 404.1520c. Thus, the Court can only consider whether the ALJ's reasoning was supported by substantial evidence. The ALJ discredited Mr. Balis's opinion in part because it did not represent Claimant's marked improvement with medication and proper diet. While Claimant had reported improvement prior to Mr. Balis's assessment, one month after the assessment, Claimant reported to Dr. Pioro that she was feeling 80% better on increased medication and was able to do more. Dr. Pioro noted a normal gait and balance. There was no indication as to whether Claimant was taking her medication and following her diet at the time of Mr. Balis's examination. Although Claimant points to favorable evidence in the record indicating the opinion's consistency, "a claimant does not establish a lack of substantial evidence by pointing to evidence of record that supports her position. Rather, [Claimant] must demonstrate that there is not sufficient evidence in the record that would allow a reasoning mind to accept the ALJ's conclusion." *Greene v. Astrue*, No. 1:10-cv-0414, 2010 WL 5021033, at *4 (N.D. Ohio Dec. 3, 2010). The fact Claimant reported that she was feeling 80% better on Humira after Mr. Balis's test and had a normal gait and balance is substantial evidence to support the ALJ's conclusion. The Court, thus, finds no error.

Finally, Claimant argues that the length of treatment relationship, the frequency of examination, and the nature and extent of the relationship support assigning Mr. Balis's opinion greater weight. Claimant argues that because Mr. Balis examined her when the state agency consultants never did, Mr. Balis's opinion is entitled to greater weight.[1] The Court disagrees.

---

[1] Although Claimant does not explicitly assign error to the ALJ's treatment of the state agency consultants, because she repeatedly refers to their treatment, the Court notes that the ALJ did not error in finding their opinions persuasive. While it is true that the state agency consultants did not examine Claimant or review her entire history, the ALJ found that their

Notably, assigning weight does not involve comparing the various medical sources. The ALJ reviews each medical source opinion separately. Mr. Balis saw Claimant one time. He was not her treating doctor. Their relationship existed because Claimant was referred to Mr. Balis for a one-time examination. Thus, these factors do not weigh in favor of Mr. Balis's opinion. Moreover, even if they did, as discussed above, the ALJ concluded that the two most important factors—supportability and consistency—weigh against assigning the opinion greater weight. The Court, therefore, finds no reason to disturb the ALJ's findings. *See Harris v. Comm'r of Soc. Sec.*, 2:20-cv-4356, 2021 WL 3615721, at *8 (S.D. Ohio Aug. 16, 2021) (affirming the ALJ's decision where "the ALJ's discussion of the supportability and consistency factors satisfied the articulation requirements of §§ 404.1520c and 416.920c" and "the ALJ's supportability and consistency analysis was supported by substantial evidence").

Because Claimant states in passing that the evidence did not support the ALJ's determination that Claimant is capable of light work, the Court notes that the ALJ's RFC determination was supported by substantial evidence. Claimant repeatedly reported marked improvement of her symptoms. At various times, Claimant stated she was 90% better, 80% better, and overall able to do more with Humira and a healthy diet. In August 2019, Claimant reported 80% improvement and had a normal gait and balance. Additionally, the ALJ relied on

---

opinions were generally consistent with the medical evidence. Claimant does not challenge this finding. The fact that the state agency consultants did not examine Claimant is only one factor to consider and the two most important factors to consider are supportability and consistency. Additionally, the fact that the state agency consultants did not review the entire record does not make their opinion unpersuasive. "An ALJ can rely on a state agency physician's opinion even if they did not review the entire record, as long as the ALJ himself considered the changes in evidence." *Jenkins v. Comm'r of Soc. Sec.*, No. 1:16 CV 584, 2017 WL 1093759, at *7 (N.D. Ohio Mar. 23, 2017). The ALJ discussed the new the medical evidence. The Court, therefore, finds no error in the ALJ's treatment of the state agency consultants' opinions.

13

the state agency consultants' opinion that Claimant was capable of light work. This is substantial evidence to support the ALJ's decision. Accordingly, the Court finds Claimant's arguments meritless.

## VI. Conclusion

Based on the foregoing, the Court AFFIRMS the Commissioner's final decision denying Claimant Disability Insurance Benefits.

IT IS SO ORDERED.

Dated: November 9, 2021

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE
